IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| B.E.L., individually and on behalf of his minor child, B.E.L., | ) ) ) | CIVIL NO. 14-00066 SOM/BMK |
| | ) | ORDER AFFIRMING |
| | ) | ADMINISTRATIVE HEARING |
| Plaintiff, | ) | OFFICER'S DECISION |
| | ) | |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**ORDER AFFIRMING ADMINISTRATIVE HEARING OFFICER'S DECISION**

I.        **INTRODUCTION.**

Plaintiff B.E.L., the father of B.E.L. ("Student"), a

minor eligible to receive special education and related services,

seeks reversal of the Findings of Fact, Conclusions of Law, and

Decision (the "Decision") issued by an Administrative Hearing

Officer ("AHO").  The AHO concluded that the Department of

Education ("DOE") had not violated the Individuals with

Disabilities Education Improvement Act of 2004 ("IDEA").  The

court affirms the Decision.

II.        **FACTUAL BACKGROUND.**

Student is an elementary school student whose home

school in Hawaii's statewide public school system, run by the

DOE, is Aliiolani Elementary.  ECF No. 10-1, PageID # 141, 143.

Student attended Aliiolani from kindergarten to second grade.

Id., PageID # 143.

According to Student's first-grade teacher, Student struggled with two- to three-step directions, with writing the letters of the alphabet, and with remaining focused during class. ECF No. 10-1, PageID # 145-46; ECF No. 13-2, PageID # 776-77. To address Student's needs, Student's teacher moved his desk. This appeared to slightly improve Student's ability to focus. ECF No. 13-2, PageID # 779.

At an open house at the beginning of the 2011-12 school year, Student's first-grade teacher spoke with Student's parents, who indicated that there had been concerns about Student's attention in the past. ECF No. 10-1, PageID # 146.

After the open house, Student's first-grade teacher talked with a special education teacher about ways to help Student focus. Id. After those discussions, Student's teacher began using nonverbal reminders and cues, and modifying assessments for Student. ECF No. 13-2, PageID # 782-83.

Throughout the school year, Student's first-grade teacher also tried to help Student through preferential seating, a behavior chart, breaking assignments into smaller chunks, and providing extra time. ECF No. 10-1, PageID # 146. Student was tutored by three different individuals at various points during the school year. Id.

Student's first-grade teacher said that she could not do more for Student without teaching below the grade-level

2

standard, which she was not permitted to do.  Id.  Student made some progress in his first-grade class, but was still behind his peers and struggled to function effectively.  Id.

In the third quarter of his first-grade year, Student was tested and found to be eligible for special education and related services under the IDEA.  Id., PageID # 143.

On March 8, 2012, a meeting was held with Student's parents, a social worker, Student's general education teacher, Student's special education teacher, a student services coordinator, and the school principal to develop an Individualized Education Program ("IEP") for Student.  ECF No. 12-1, PageID # 281.

The resulting IEP provided for 675 minutes of special education services per week in language arts and math.  Id., PageID # 290-91.  Student was to receive language arts and math instruction in a special education classroom at the same time that his peers were receiving general education instruction in the same subjects.  ECF No. 13-2, PageID # 822.  The 2012 IEP also provided for "preferential seating close to the source" and "repeated instruction" in all classes, including Student's general education classes.  ECF No. 12-1, PageID # 290.

At the 2012 IEP meeting, Plaintiff did not express any dissatisfaction with Student's placement in special education for language arts and math.  ECF No. 13-1, PageID # 713.  Plaintiff

stated at the administrative hearing that he was happy with the improvements in Student's reading that followed Student's placement in special education. Id. Plaintiff contends, however, that at the time of the 2012 IEP, he did not know that special education services could be provided in a general education classroom, learning of this later from his attorney. Id., PageID # 682; ECF No. 28, PageID # 989.

A Prior Written Notice of Department Action dated March 12, 2012, states that remaining in a general education class with interventions was an option considered for Student, but that this option was rejected because "[d]espite classroom interventions, [Student] continue[d] to struggle in reading and math" and was "not meeting grade level benchmarks." ECF No. 12-1, PageID # 306.

Student's special education class had approximately ten other students ranging from kindergarten to second grade. ECF No. 10-1, PageID # 147. Two students had adult aides. Id. Student was grouped with three other students with abilities similar to his. Id. According to his special education teacher, Student did well in his special education class, but was too far behind academically to succeed with first-grade material, even with modifications. ECF No. 13-3, PageID # 836, 848.

At the end of the first grade, Student was at a kindergarten level in language arts and reading. Id.; ECF No.

13-3, PageID # 172-73.  Student also had difficulty spelling and writing, and still struggled with the first fifty sight words even though children his age were expected to know two hundred sight words.  ECF No. 10-1, PageID # 146-47.

On August 17, 2012, Student was diagnosed by a private psychologist with a reading disorder/dyslexia.  ECF No. 12-1, PageID # 360.  According the psychologist, Student would benefit from remedial tutoring in reading and spelling, and from help memorizing basic math facts.  Id., PageID # 361.

In his second-grade year, Student continued with special education for language arts and math, and general education for all other subjects and activities.  ECF No. 10-1, PageID # 147.  In his special education class, Student was exposed to some second-grade material, but, according to Student's special education teacher, could not have kept up with second-grade material in a general education class, even with modifications.  Id.; ECF No. 13-3, PageID # 845, 868.  Student's special education teacher testified that Student's parents never expressed discontent with Student's special education placement.  ECF No. 10-1, PageID # 148.

Student's second-grade general education teacher testified that Student was behind in reading, writing, spelling, and other areas.  Id.  For example, Student needed assistance reading books that were at a first-grade level.  Id.  Student's

general education teacher assisted Student in his general
education classes, giving him extra time and preferential
seating.  Id.  His general education teacher testified, however,
that Student was not ready to be in her general education
language arts class even with those accommodations and that the
modifications necessary for him to succeed would not comport with
second-grade standards.  Id.

On February 8, 2013, an IEP meeting was held with
Student's parents, his general education teacher, his special
education teacher, and the school principal.  Id., PageID # 149;
ECF No. 12-1, PageID # 304.  This IEP maintains 675 minutes of
special education per week, and provides for preferential
seating, repeated instruction, and extra time to process
statements in all classes.  ECF No. 10-1, PageID # 149.  The IEP
describes Student's placement as follows: "[Student] will not
participate with nondisabled students in the general education
class for mathematics and language arts.  He will participate
with his general education peers for all other subjects and
activities, including but not limited to computer, library, P.E.,
health, art, field trips, resource days and assemblies."  ECF No.
12-1, PageID # 303.

Plaintiff testified that there was no discussion of
placement alternatives at the meeting held on February 8, 2013.
ECF No. 13-1, PageID # 684.  According to Plaintiff, DOE

officials merely stated that Student would continue to get help in the special education classroom.  Id., PageID # 684-85. However, Student's second-grade general education teacher testified about a placement discussion that occurred at the IEP meeting and noted that Student's parents did not object to the placement at any time.  ECF No. 10-1, PageID # 149.

On August 7, 2013, Student's parents withdrew Student from his home school and indicated that Student would be enrolling at a private school.  Id., PageID # 150.  Student continues to attend the private school.  Id.

On the same date, Plaintiff, individually and on behalf of Student, filed a request for a due process hearing.  Id., PageID # 47-52.  The administrative complaint stated:

> Student['s] program is for an overly
> restrictive placement because he is isolated
> from non-disabled peers in Math and Language
> Arts when he could have had supplemental
> aides and/or accommodations such as
> chu[n]king instructions, reduced homework,
> allowing Student to take in-class assignments
> home, extra time on tests, having content
> modified as needed, modifying the methodology
> and presentation of instruction and/or having
> homework assignments written out for him.

Id., PageID # 50.  The administrative complaint also requested reimbursement for the costs of Student's private school.  Id.

In a resolution session after the administrative complaint was filed, Plaintiff first expressed to the DOE his desire to have Student in general education classes full-time at

the home school.  ECF No. 13-1, PageID # 713.  Plaintiff asked
that the school conduct another IEP meeting to evaluate a
placement in general education with the supplemental services
listed in the administrative complaint, but the DOE concluded
that it did not have enough new information to hold another IEP
meeting.  ECF No. 10-1, PageID # 151; ECF No. 11-1, PageID # 197;
ECF No. 13-1, PageID # 689-91.

   An administrative hearing was held from November 21 to
November 22, 2013.  ECF No. 10-1, PageID # 142.  On January 7,
2014, the AHO issued his Decision rejecting the claims in the
administrative complaint.  Id., PageID # 141-62.

   On February 6, 2014, Plaintiff filed a complaint in
this court seeking review of the AHO's Decision.  See ECF No. 1.
Plaintiff contends that the AHO "failed to assign any level of
credibility to the testimony of witnesses that are cited in the
Findings of Facts" and "cited facts that are not relevant in
the analysis he was charged with making."  ECF No. 28, PageID
# 985.  Plaintiff also appears to argue that the AHO erred in
concluding that the DOE had not violated the IDEA and in
concluding that Plaintiff is not entitled to reimbursement of
private school tuition.  Id., PageID # 988-96, 1000-03.

III.      STATUTORY FRAMEWORK.

   "The IDEA is a comprehensive educational scheme,
conferring on disabled students a substantive right to public

8

education." Hoeft v. Tuscon Unified Sch. Dist., 967 F.2d 1298,

1300 (9th Cir. 1992). The IDEA ensures that "all children with

disabilities have available to them a free appropriate public

education that emphasizes special education and related services

designed to meet their unique needs and prepare them for further

education, employment, and independent living." 20 U.S.C.

§ 1400(d)(1)(A).

To provide a free appropriate public education ("FAPE")

in compliance with the IDEA, the DOE must evaluate a student,

determine whether that student is eligible for special education

and related services, conduct and implement an IEP, and determine

an appropriate educational placement for the student. See 20

U.S.C. § 1414.

The student's FAPE must be "tailored to the unique

needs" of the student via the IEP. Bd. of Educ. of Hendrick

Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 181 (1982). The

IEP must be in writing and contain, among other things, the

specific educational services to be provided to the child and a

statement of annual goals. See 34 C.F.R. § 222.50; see also 20

U.S.C. § 1414(d).

Plaintiff's focus in the present appeal is the IDEA's

requirement that disabled students be educated in the least

restrictive environment. See 34 C.F.R. § 300.114; Hawaii

Administrative Rules ("HAR") § 8-60-15. The failure to place a

disabled student in the least restrictive environment constitutes a denial of a FAPE.

The IDEA discusses the least restrictive environment as follows:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A).

**IV.      STANDARD.**

The IDEA provides that "[a]ny party aggrieved by the findings and decision" of an AHO "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."  20 U.S.C. § 1415(i)(2)(A).

When reviewing an appeal from an AHO, the court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence,

shall grant such relief as the court determines is appropriate."
20 U.S.C. § 1415(i)(2)(c).  The burden of proof is on the party
challenging the administrative ruling.  <u>Schaffer ex rel. Schaffer</u>
<u>v. Weast</u>, 546 U.S. 49, 62 (2005).

The court reviews the AHO's conclusions de novo.
<u>Ashland Sch. Dist. v. Parents of Student E.H.</u>, 587 F.3d 1175,
1182 (9th Cir. 2009).  De novo review under the IDEA "carries
with it the implied requirement that due weight shall be given to
the[] [administrative] proceedings." <u>Id.</u> (quoting <u>Bd. of Educ.</u>
<u>v. Rowley</u>, 458 U.S. 176, 206 (1982)).  A district court "must
give deference to the state hearing officer's findings" and
"avoid substituting its own notions of sound educational policy
for those of the school authorities which it reviews." <u>Id.</u>
(internal quotation marks and brackets omitted).

V.      **ANALYSIS.**

A.   **Plaintiff May Only Raise Issues That Were Properly
Before the AHO.**

In seeking this court's review of the AHO's Decision,
Plaintiff is confined to the issues raised in his request for an
impartial due process hearing.  <u>See</u> ECF No. 10-1, PageID # 48-51.
Any issues not contained in that original request were not
properly before the AHO and are not properly before this court.
<u>See</u> <u>Cnty. of San Diego v. California Special Educ. Hearing</u>
<u>Office</u>, 93 F.3d 1458, 1465 (9th Cir. 1996); <u>Lofisa S. v. Hawaii</u>
<u>Dep't of Educ.</u>, Civ. No. 12-00213 SOM-BMK, 2013 WL 638599, at *6

(D. Haw. Feb. 13, 2013).

In his Amended Opening Brief, Plaintiff argues that Student was denied a FAPE through loss of educational opportunity and interference with parental participation. ECF No. 28, PageID # 994-96. These contentions were not included in his administrative request. See ECF No. 10-1, PageID # 48-51.

Nor did Plaintiff's administrative request include the contention that the DOE had failed to discuss the least restrictive environment for Student at the IEP meeting on February 8, 2013. Plaintiff does argue in the request that the DOE's alleged failure to place Student in the least restrictive environment constituted the denial of a FAPE, but Plaintiff nowhere contends that there was a failure to discuss the least restrictive environment at the IEP meeting. See id., PageID # 49-50.

Because Plaintiff may only obtain judicial review of issues that were raised in his original request, this court may not consider Plaintiff's arguments that Student was denied a FAPE through: (1) loss of educational opportunity; (2) interference with parental participation; and (3) the failure to discuss the least restrictive environment at Student's IEP meeting.

**B. Student's Placement Was Not a Denial of a FAPE.**

Plaintiff contends that Student was denied a FAPE through placement in an overly restrictive environment for math

and language arts.  ECF No. 1, PageID # 4.  According to
Plaintiff, the least restrictive environment for Student was
placement in general education classes full-time with certain
accommodations provided.  ECF No. 28, PageID # 988.

The IDEA's requirement that disabled students be
educated in the least restrictive environment is evaluated
through consideration of the following factors: "(1) the
educational benefits of placement full-time in a regular class;
(2) the non-academic benefits of such placement; (3) the effect
[Student] had on the teacher and children in the regular class;
and (4) the costs of mainstreaming [Student]."  Sacramento City
Unified Sch. Dist., Bd. of Educ. v. Rachel H., 14 F.3d 1398, 1404
(9th Cir. 1994).

Plaintiff appropriately cites the Rachel H. factors as
controlling the analysis of least restrictive environment, but
then fails to challenge the AHO's determination of any specific
factor or to present any argument relating to any of the four
factors.  Instead, Plaintiff appears to be generally arguing that
Student's placement in a special education class for language
arts and math was necessarily overly restrictive because he was
not that far behind his peers, exhibited no behavioral problems,
and felt isolated by being placed in special education.  See ECF
No. 28, PageID # 991-94.  This general contention does not
overcome the DOE's evidence regarding the appropriateness of the

placement under <u>Rachel H.</u>

### 1.    **Educational Benefits.**

Testimony at the administrative hearing from Student's teachers clearly indicated that Student was unlikely to receive any educational benefit from a full-time placement in a general education class.  As the AHO noted, Student had previously struggled in general education language arts and math classes even with accommodations, including nonverbal reminders, modification of assessments, preferential seating, chunking, and extra time.  Most of the accommodations Plaintiff cites in support of his argument that Student's placement full-time in general education with accommodations would be the least restrictive environment were in fact used by Student's first-grade and second-grade general education teachers, both of whom indicated that Student struggled and was behind his peers even with those accommodations.  <u>See</u> ECF No. 13-2, PageID # 794, 796-97; ECF No. 14-1, PageID # 502-03.  Student's special education teacher also testified that Student could not have kept up with the material in general education language arts and math classes, even with modifications.  <u>See</u> ECF No. 13-3, PageID # 845, 868.

The DOE's Prior Written Notice of Department Action dated March 12, 2012, also supports this position.  It states that the DOE considered the option of keeping Student in a general education class with interventions, but rejected that

option because "[d]espite classroom interventions, [Student] continue[d] to struggle in reading and math" and was "not meeting grade level benchmarks."  ECF No. 12-1, PageID # 306.

Student's placement in special education for language arts and math, on the other hand, appears to have been educationally beneficial for Student.  Student's special education teacher testified that Student did well in her class, and even Plaintiff indicated that Student made improvements in reading after being placed in special education.  See ECF No. 13-1, PageID # 713; ECF No. 13-3, PageID # 848.

Plaintiff has not offered any evidence indicating that a full-time placement in general education would be educationally beneficial to Student.  Plaintiff did not present any expert testimony at the administrative hearing or produce any other evidence outlining the academic benefits Student would derive from a full-time general education placement.  Instead, Plaintiff appears to rely on his own opinion that Student should be placed in general education full-time, and on the assertion that Student was not very far behind his peers academically.  Neither that opinion nor that assertion outweighs the substantial evidence presented by the DOE that Student struggled in general education language arts and math, and could not keep up with grade-level material.

At the hearing this court held, Plaintiff's counsel

asserted that the DOE placed Student in special education for part of the day just because he was six months behind his peers. Counsel claimed that, under that standard, every student in Hawaii should be in special education because statistically most of the children in Hawaii's public schools are six months behind their peers on the mainland. Nothing in the record supports any part of this statement. Focusing on the part of the statement actually relevant to this appeal, the court notes that the DOE has never based Student's placement solely on a six-month gap between Student and his peers.

At the hearing on the present matter, Plaintiff's counsel also attempted to support his case by arguing that there was another child even further behind than Student who was allowed to remain in a general education class. Testimony at the administrative hearing indicated that there was indeed a child in general education that may have been further behind in his reading abilities than Student. ECF No. 14-1, PageID # 531. However, Plaintiff offers no information about this child other than his teacher's recollection of his reading level. Because Plaintiff does not produce any evidence to show that this child is similarly situated or otherwise comparable to Student, this court cannot conclude that his placement is relevant to whether Student was placed in the least restrictive environment. The other child may not even have been disabled or covered by the

IDEA, instead falling behind because of a circumstance like homelessness, abuse, or hospitalization. Thus, the existence of a student at a lower reading level in a general education class does not, without more, show that the DOE violated the IDEA in this case.

As the AHO noted, Student has a clearly established need for special education services in language arts and math, and would not benefit academically from being placed in general education full-time, even with accommodations.

## 2. Nonacademic Benefits.

Plaintiff appears to argue that placement in general education full-time would benefit Student nonacademically through integration with nondisabled peers. See ECF No. 10-1, PageID # 50; ECF No. 28, PageID # 992. Plaintiff contends that Student's placement in special education for language arts and math isolates Student from his peers and has caused Student to lose self-esteem. See ECF No. 10-1, PageID # 50; ECF No. 13-1, PageID # 672.

Plaintiff does not explain, however, why his concerns are not ameliorated by Student's placement in general education for all classes and activities except language arts and math. As the AHO noted, Student's placement integrates him with his non-disabled peers for the majority of the day. Thus, Student is not "isolated" from his peers.

In addition, Student's special education teacher testified that Student's confidence improved in her class, and that he was part of a "close knit group" that "built [a] relationship."  ECF No. 13-3, PageID # 849.

The court is not questioning Plaintiff's concern about Student's self-esteem and understands that Student may have been distressed about being placed in special education for part of the school day.  However, Plaintiff does not show that the remedy is placement full-time in general education.  Student's first-grade general education teacher testified that Student was "very frustrated and down about himself regarding the school work" in his general education class "because it was increasingly getting more difficult, and at times he would just shut down."  ECF No. 13-2, PageID # 786.  She also indicated that Student was "feeling very badly about himself as a learner."  Id., PageID # 800.  This testimony, coupled with the information provided by Student's other teachers, suggests that Student's placement in general education full-time might not improve Student's self-esteem.  Instead, such a placement could have a similarly negative effect on Student's self-confidence.  As a result, this court cannot agree with Plaintiff that nonacademic benefits support a full-time general education placement.

**3.   Effect on Teacher and Other Children.**

The AHO concluded that Student's placement in general

education full-time would likely have a detrimental effect on the teacher and other children in the class. Student's teachers uniformly indicated that Student required more modification to the curriculum than was possible in a general education classroom, and that there was not enough time to meet Student's needs while teaching the rest of the class at grade-level. See ECF No. 13-2, PageID # 796-97, 800, 826; ECF 13-3, PageID # 836; ECF No. 14-1, PageID # 503, 506, 527. The lack of disruptive behavior by Student, see ECF No. 28, PageID # 993-94, does not mean that other students in the general education class were unaffected by his presence. The record indicates that the modifications Student needed would have been unworkable for a teacher required to teach to grade-level standards, and detrimental to other students who would have been denied substantial time with their teacher. This court therefore concludes that the AHO's determination in this regard was correct.

### 4.  The Costs of Mainstreaming.

As the AHO noted, no evidence was presented regarding the costs of mainstreaming Student.

### 5.  Least Restrictive Environment.

Consideration of the Rachel H. factors indicates that Student's placement in general education for all classes except language arts and math was appropriate under the IDEA. That

placement was tailored to Student's needs and, as the AHO found, not overly restrictive.

### C. Plaintiff Is Not Entitled To Reimbursement of Private School Tuition.

Because this court has concluded that Plaintiff has not established an IDEA violation, Plaintiff is not entitled to reimbursement of Student's private school tuition. See Heyly T.S. v. Hawaii, Civ. No. 12-00327 ACK-KSC, 2013 WL 1412272, at *5 (D. Haw. Apr. 5, 2013) ("A parent or guardian is entitled to reimbursement only if a federal court concludes both (1) that the public placement violated the IDEA, and (2) that the private school placement was proper under the IDEA. If either criterion is not met, the parent or guardian may not obtain reimbursement." (internal quotation marks, brackets, and citation omitted)).

### D. The AHO Did Not Err By Failing to Assign a Level of Credibility to Testimony Cited in His Findings of Fact.

Plaintiff contends that the AHO erred by "fail[ing] to assign any level of credibility to the testimony of witnesses that are cited in the Findings of Fact[]." ECF No. 28, PageID # 985. This contention fails. If the AHO cited testimony provided at the administrative hearing in his Findings of Fact, the AHO inherently determined that the testimony was credible. Plaintiff cites no requirement that an AHO's decision explicitly assign a level of credibility to each witness when an AHO relies on testimony in Findings of Fact.

**E.   The AHO Did Not Err By Citing Irrelevant Facts**.

Plaintiff contends that the AHO's Decision must be reversed because the AHO cited to (1) Plaintiff's failure to object to Student's placement, (2) the private psychologist's report on Student, and (3) Student's progress in special education, when such information was allegedly irrelevant to the legal question before the AHO.  ECF No. 28, PageID # 996-1000.

Although Plaintiff claims that by such argument he is not disputing any of the Findings of Fact, see ECF No. 28, PageID # 984-85, Plaintiff expresses dissatisfaction with many of the AHO's factual findings on the basis of relevancy.  See ECF No. 28, PageID 998, 999.  However, the AHO's references to the information Plaintiff cites does not require reversal.  An AHO is not confined in his Findings of Fact to statements directly relevant to the subsequent legal analysis.[1]

If Plaintiff's argument is, as he claims, that the AHO erred by applying the above information to analysis of the legal question, Plaintiff still fails to demonstrate reversible error.

First, it does not appear that the AHO actually relied

_____

[1] Plaintiff also briefly argues that paragraphs 32 and 55 of the AHO's Findings of Fact include matters that should not have been relied on because they are "opinions from school staff on the ultimate issue of this hearing" and "[n]o testimony was provided addressing the required legal analysis by school staff in arriving at these legal conclusions."  ECF No. 28, PageID # 999.  The testimony underlying these paragraphs, however, is in no way improper, and the AHO did not commit error in noting educators' opinions on Student's abilities.

on Plaintiff's failure to object to Student's placement in concluding that Plaintiff had failed to demonstrate a violation of the IDEA.  Although the AHO made note of the lack of objection to Student's placement, the AHO's legal analysis section includes a lengthy recitation of background facts in this case, and only "Student's placement at the home school throughout the school day, and Student's proven need for special education services in math and language arts" are cited as reasons for the AHO's conclusion that Student was not denied a FAPE.  ECF No. 10-1, PageID # 158.  Nor does the AHO's subsequent discussion of the Rachel H. factors contain any mention of Plaintiff's lack of objection to Student's placement.

Second, the private psychologist's report was noted only as the source of Student's diagnosis of dyslexia and as evidence that Student was provided with appropriate supplemental aids and accommodations.  See ECF No. 10-1, PageID # 152, 160.  The AHO does not say why supplemental aids and accommodations were considered separately from whether Student was placed in an overly restrictive environment, but, in any event, discussion of the private psychologist's report was certainly not reversible error.  One of the factors the AHO was required to consider in determining whether Student's placement was appropriate was the educational benefit of the full-time general education placement Plaintiff claims was appropriate.  Plaintiff offers no authority

requiring reversal because the AHO, likely in consideration of this factor, noted that the private psychologist had not recommended the placement Plaintiff seeks.

Third, the AHO's consideration of Student's improvements while in special education was appropriate. As noted above, the AHO was required to consider the educational benefit of a full-time general education placement. It could not have been error for the AHO to have considered the educational benefits of Student's placement in special education in concluding that Student was in need of special education services and would not educationally benefit from a full-time general education placement.

### F. The AHO Did Not Err By Failing to Include Relevant Evidence.

Plaintiff alleges in his Complaint that the AHO failed to include all relevant evidence in his Decision. ECF No. 1, PageID # 4. Although Plaintiff appears to believe that the AHO made many such errors, the only specific matter identified is the AHO's failure to consider that "the IEP team determined Student's placement before reviewing the possible supplementary aides [sic] and services that could be provided to Student." ECF No. 1, PageID 4.

Plaintiff does not demonstrate that the AHO ignored any relevant evidence. The AHO's failure to consider any predetermination of Student's placement by the IEP team could not

have been error because there was no evidence of any such predetermination. In fact, the AHO had before him evidence that possible modifications and interventions in a general education class were considered by the IEP team as an option for Student. See ECF No. 12-1, PageID # 306. In light of this evidence, no court could conclude that the AHO erred by not considering the alleged predetermination of Student's placement.

**VI.      CONCLUSION.**

The AHO's Decision is supported by the record and is affirmed.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 24, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge