```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                       FOR THE DISTRICT OF HAWAII

 3                                    )
     B.E.L., individually and on       )  CV 14-00066 SOM-BMK
 4   behalf of his minor child,        )
     B.E.L.,                           )  Honolulu, Hawai
 5                                     )  October 14, 2014
              Plaintiff,               )  9:45 A.M.
 6       vs.                           )
                                       )  Hearing on Administrative
 7   STATE OF HAWAII, DEPARTMENT       )  Record
     OF EDUCATION, et al.,             )
 8                                     )
              Defendants.              )
 9   _____)

10                      TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE SUSAN OKI MOLLWAY
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiff:          KEITH H. S. PECK
                                 Pioneer Plaza
14                               900 Fort Street Mall, #1140
                                 Honolulu, HI 96813
15
     For the Defendant:          CARTER K. SIU
16                               Dept. of the Attorney General
                                 Education Div.
17                               235 S. Beretania St., Rm. 304
                                 Honolulu, HI 96813
18
     Official Court Reporter:    Debra Kekuna Chun, RPR, CRR
19                               United States District Court
                                 300 Ala Moana Blvd. Ste. C285
20                               Honolulu, HI 96850
                                 (808) 541-2061
21

22

23

24
     Proceedings recorded by machine shorthand, transcript produced
25   with computer-aided transcription (CAT).
```

```
 1   TUESDAY, OCTOBER 14, 2014              9:35 O'CLOCK A.M.
 2             THE CLERK:  Civil 14-66 SOM-BMK, B.E.L., et al.,
 3   versus State of Hawai'i Department of Education, et al.  This
 4   case has been called for a Hearing on Administrative Record.
 5             Counsel, please make your appearances for the record.
 6             MR. PECK:  Good morning, Your Honor.  Keith Peck on
 7   behalf of plaintiffs.
 8             THE COURT:  Good morning.
 9             MR. SIU:  Good morning Your Honor.  Deputy Attorney
10   General Carter Siu here on behalf of the Department of
11   Education.
12             THE COURT:  Okay.  You can both sit down.
13             I am sorry that I didn't give you my usual prehearing
14   inclination to give you some idea before preparing for this
15   hearing what my thoughts were.  I was really sick last week; so
16   I didn't work on it.  Sorry.
17             MR. PECK:  Not at all, Your Honor.
18             THE COURT:  This happens to you folks, too,
19   sometimes; so I figure you can imagine.
20             But in any event let me give you some idea right now
21   so that you can focus your argument.  As always, when I give an
22   inclination, it's not a ruling; it's just a preliminary
23   thought, and the whole purpose of the hearing is to give you an
24   opportunity to address those thoughts.  I much prefer that you
25   point out to me things I may be missing before I rule than that
```

```
 1   I make a mistake in ruling, which is bad for its effect on the
 2   parties and, you know, not too great if I'm going to get
 3   reversed.
 4             So I actually am inclined to affirm the
 5   administrative hearing officer.  My thought is that on this
 6   record I don't have a reason to think that the administrative
 7   hearing officer has missed things or failed to do things that
 8   needed to be done or relied inappropriately on irrelevant or
 9   unbelievable factual assertions.  In my own review of the
10   record I did not make a -- I did not reach a conclusion that
11   the DOE had violated the IDEA by failing to provide the student
12   with FAPE, and I, therefore, am not inclined to rule that the
13   student should be reimbursed for private school tuition.  And
14   mostly, you know, I'm concerned that, if there is a problem, it
15   hasn't actually been identified for me in the plaintiff's
16   briefing.  So let me turn this over to Mr. Peck so he can tell
17   me what I may have missed.
18             MR. PECK:  Well, I want to do it in a courteous way;
19   so I won't just point out what you may have missed.  I'll just
20   present the issues.
21             The issue is that the IEP is developed all but the
22   placement.  So the PLEPs are -- Present Levels of Educational
23   Performance are ascertained, written down, the goals are
24   derivative of the present levels of educational performance.
25   Then you get to the services, and the services are delineated
```

1  in -- the accommodations are supposed to come next.  What
2  accommodations does this child need in particular?  So does he
3  need to have the work broken down?  Does he need a one-on-one
4  aide?  Does he need various modifications and accommodations?
5         After the whole IEP -- that part of the IEP is
6  developed, then and only then are you supposed to go and
7  decide, okay, given these services, this program, what is the
8  least restrictive environment we can place this child in?  That
9  process wasn't followed, and it's clear in the record.  I'll go
10 back -- I'd like to make my presentation and then fill in any
11 gaps, point out anything, so I can consistently tell you of my
12 perspective on the law.
13         So instead of doing that they decided after the goals
14 and objectives this child will get 675 minutes of special
15 education because he's going to be in special ed for those
16 minutes.  The parent didn't know that you can get special
17 education services in a regular education classroom; so they
18 just went through the process.  The process was ill-formed at
19 that point when they decided placement before they talked about
20 the modifications, and then they placed the child in the --
21 then they went to item 23 and ratified their previous decision
22 about having placed this child in special education services
23 for math and English.
24         Now, what is the proof -- since I bear the burden
25 what is the proof the child should not have been placed in

```
 1   special education?  Well, we look at another case.  We look at
 2   Rachel H., a child of five who was put into some special ed and
 3   some regular ed, and that was deemed inappropriate by the court
 4   because this is not an education statute at all.  This is an
 5   anti-discrimination statute.  And the thrust of this statute is
 6   not to best educate the child as Rowley stands for; it is to
 7   educate the child in an appropriate manner in the least
 8   restrictive placement.
 9              This child was six months behind his classmates.  The
10   children in the second grade, there was a child with less
11   abilities; in first grade, two years behind the other
12   classmates; and they did it.  The DOE admitted on the record
13   that the IEP could have been provided in the second grade.
14   That was an admission.  And the child is progressing from grade
15   to grade.
16              Now, I wonder in our circuit what is it that defines
17   a child who should not be in an age-appropriate curriculum?  It
18   certainly isn't based on the excuses the Department of
19   Education gave.  Their defense was under the law we cannot
20   accommodate this child if the child's behind because we have
21   this core requirement that the law -- it doesn't permit us to
22   do that.  There's no evidence in the record.  There's no law.
23   But that's what they said the reasonings -- their reasoning
24   was.
25              They said that it would be better for this child to
```

```
 1   be in special education.  That is an irrelevant concept.  The
 2   hearing officer relied on a recommendation that the child needs
 3   services.  No psychologist is credible to decide the ultimate
 4   issue as to whether this child was -- should be in a regular ed
 5   or a special ed classroom because that's a legal determination,
 6   not a psychological determination.  So when the hearing officer
 7   relied on that -- in fact, all of the bases upon which the
 8   hearing officer relied were irrelevant, and he misconstrued the
 9   law completely.  And, therefore, a de novo review should
10   completely dismiss the hearing officer's analysis, if that's
11   what it can be called.
12             And, lastly, the defense of it's not the facts that
13   show that the child should be in a regular education classroom,
14   it's Mr. Peck.  He's the only one that thinks this because he
15   advised his clients that this was a possibility, and the case
16   is based on that.  That is a red herring.  The facts in the
17   case support this, and I would love to get the opportunity to
18   delineate this area of the law a little further.  Thank you,
19   Your Honor.
20             THE COURT:  Okay.  Tell me what record page you're
21   relying on when you say that the DOE admitted that some other
22   child -- and I assume you're arguing that there's evidence in
23   the record that this is a similarly situated child to the child
24   in our case; so I want to look at that place in the record so I
25   can see if indeed the record shows that similarity.
```

```
 1              MR. PECK:  Volume 2, page 265, and it's precursor
 2   pages.
 3              THE COURT:  Page 265?
 4              MR. PECK:  Yes.  265.  And it's certainly cited in my
 5   brief.
 6              THE COURT:  So what does it say that makes this child
 7   someone I can say is comparable to the student in our case?
 8              MR. PECK:  The comparability is only with regard to
 9   the disability and how far behind the child is.  It doesn't
10   have to be the same or similar disability.  It's how far
11   behind.  Because the DOE said, "Well, this child was six months
12   behind.  It would be very hard to accommodate this child's
13   needs six months behind."  This child here on the record was in
14   kindergarten -- he was at the kindergarten level; so the
15   comparability is only relevant with regard to that issue.
16              THE COURT:  Okay.  Let me hear from Mr. Siu.
17              MR. SIU:  Thank you, Your Honor.  I think ultimately
18   what -- how we view it as is that the briefing has -- that has
19   been submitted by the student falls far below the standard
20   required for review on appeal.  It fails to highlight true
21   error.  Because of this the department seeks affirmation of the
22   AHO's decision based on the theory of waiver.  I believe
23   cutting and pasting an original brief isn't sufficient.  I
24   think this court has acknowledged that.  The amended
25   submission, when I reviewed section II(C) it didn't seem like
```

```
 1   it pointed out true error.  It just griped about various things
 2   that they disagreed with.
 3              In addition to waiver the department believes that
 4   the decision by the administrative hearings officer should be
 5   affirmed on its merits.  The actual decision says that the
 6   student failed to sustain their burden of proof of producing
 7   evidence, and that has never been actually sufficiently
 8   attacked by the student.
 9              The claim that has actually been submitted is that
10   the placement in special education for math and language arts
11   is overly restrictive, and there was no evidence submitted at
12   trial to say that it was overly restrictive.  In fact, there
13   was no real discussion in any submissions regarding the Rachel
14   H. factors, and those factors are, one, educational benefit of
15   a full-time general education placement; two, the nonacademic
16   benefits of such placement; three, the effect of the disabled
17   child has on the teacher and children in the regular class; and
18   the cost of mainstreaming the child.  As we look at the hearing
19   officer's decision, he had gone over each of those facts and
20   explained why that there was a failure to meet -- to sustain
21   the burden to meet those factors.
22              This theory about the failure to -- I'm not sure how
23   to say it, but I think he's trying to advance the procedural
24   argument that they didn't discuss fully the general education
25   placement in the IEP process.  That has never been alleged in
```

1   the due process hearing complaint.  I've alleged that in the
2   very beginning of the administrative hearings officer level to
3   the present.  We haven't agreed to argue that or accept that as
4   a new claim, and, therefore, it's not a claim that should be
5   adjudicated or considered on appeal.
6          Also, the theory that, you know, the father didn't
7   know that the kid could be in a general ed class with special
8   education and supports, that is from the attorney.  There's no
9   evidence to say that he could have made it in the general
10  education setting with specialized instruction and
11  modifications.  In fact, the evidence shows that he had been
12  getting numerous modifications before he was referred to
13  special education, that even with special education he was far
14  behind his peers.  That was confirmed in the Stanford
15  Diagnostic Reading Test.  I think the special education teacher
16  who administered the test -- I think it's in my briefing --
17  showed that he couldn't take the test for his age group.  He
18  struggled to read; so she administered -- she actually broke
19  protocol and actually helped him read the answers -- the
20  questions to help him.  And even then he failed; so she had to
21  go back to one grade below her, one for first graders, and even
22  then he scored at six months behind his peers.
23         The first grade teacher, the second grade teacher,
24  the special education teacher, all new his abilities and his
25  frustrations, that he was unable to keep up with his peers in

 1   general education.  He showed frustration when he wasn't able

 2   to read.  Even with modifications, close seating.  Even in

 3   history class.

 4              In history class the second grade teacher had to come

 5   up and give him a book made for first graders or kindergartners

 6   so that he could keep up and participate.  I mean, they did the

 7   best they could with his abilities, and I think there's no

 8   evidence to suggest that special ed for language arts and math

 9   with inclusion opportunities in all other subjects throughout

10   the day, that is the LRE, and I think that's why the hearings

11   officer's decision on the merits should be affirmed.

12              As for this other child that Mr. Peck is referring

13   to, that's a different child.  That IEP of that child hasn't

14   been explored.  We don't know enough about that child's IEP or

15   whether that child is in or out of special ed just like this

16   child is, this special education student.  This case should be

17   judged on this student, on this student's IEP, and whether the

18   placement was overly restrictive.  Unless the court has other

19   questions --

20              THE COURT:  Okay.  Thank you.

21              MR. SIU:  Thank you.

22              THE COURT:  Mr. Peck, I'm going to give you the last

23   word.

24              MR. PECK:  Thank you, Your Honor.

25              Without being facetious, if the standard was that

```
 1   children in the public school State of Hawai'i who are six
 2   months behind the general population in the country, if the
 3   standard was that those children need to be in special ed, then
 4   every student in the State of Hawai'i would be in special ed
 5   because according to our statistics the majority of children in
 6   the Hawai'i public schools are six months behind their peers on
 7   the mainland.  If that were the standard, everybody would be in
 8   special ed; there would be no regular education classes.
 9              This is a de novo review, and this is a supremely
10   good record for appellate review.
11              THE COURT:  Isn't the problem, though, that was
12   recognized by the teachers here that this student was behind
13   the students classmates?  So your, you know, your discussion
14   about whether students in Hawai'i are behind students in other
15   states is not an analogy.  I think we're talking about whether
16   the student before me was behind that student's classmates
17   here.
18              And, actually, you know, really let's be fair.  It is
19   not the case that every student in a public school in Hawai'i
20   is behind the students out of state.  That's just like false.
21              MR. PECK:  There's a good majority that are, Your
22   Honor.
23              THE COURT:  But, I mean, that's just not true what
24   you said, and you --
25              MR. PECK:  I disagree on the fact that you could call
```

```
 1    it that non-analogy.  I think there is an analogous situation
 2    there.  But if you're going to say that being six months behind
 3    your classmates in general classes makes this child ineligible
 4    to be in those classes, that's a ridiculous statement.
 5              THE COURT:  I think --
 6              MR. PECK:  There are children --
 7              THE COURT:  Excuse me.
 8              MR. PECK:  -- no child in special education could be
 9    six months behind their classmates.  That rule would fall.
10              THE COURT:  Nobody is arguing that.  So what you just
11    said is trying to overcome an argument that nobody is making,
12    and you might want to move on to really address the arguments
13    that are being made here.  Nobody has argued that whenever
14    you're six months behind your classmates you automatically have
15    to go into special ed classsess.  I didn't see any such argument
16    by the DOE.  I don't think anything I've ever said has
17    suggested such a thing.
18              MR. PECK:  That was one of the bases upon which the
19    child was excluded; so I don't know you understand that to be
20    an argument, but I do.
21              THE COURT:  It was the case that the child was
22    behind, but if that were the only circumstance presented by the
23    child, I don't think anybody has said that that circumstance
24    warrants putting the child into special education classes with
25    nothing else.  I don't think anybody's making that argument or
```

1  has ever made that argument.

2           MR. PECK:  We differ in that regard, Your Honor.  And
3  I would like to submit this case.

4           THE COURT:  I'm sorry?

5           MR. PECK:  I have presented my case.  I feel
6  confident in what I presented, and I'm ready to -- unless you
7  have further questions.

8           THE COURT:  Okay.  I guess the reason that I'm at a
9  loss for words, I have often heard judges inform attorneys
10 that, okay, the arguments are done, the judges have heard
11 enough, the case is considered to be under submission.  What
12 you just said represents the first time I've ever heard an
13 attorney decide to tell a judge, "I would like to submit the
14 case and end this hearing, Judge.  You have enough."

15          MR. PECK:  Well, you're misquoting me, Your Honor.

16          THE COURT:  I'm really taken aback.

17          MR. PECK:  You're misquoting me, Your Honor.  I said
18 I'd like to submit -- I'm done, but I'd take further questions.
19 That's a totally different thing than what you just misquoted
20 me on; so the record stands.

21          THE COURT:  Okay.  I'll take it under advisement.
22 Thank you very much.

23          (Court recessed at 9:55 A.M.)

24

25

```
 1                    COURT REPORTER'S CERTIFICATE
 2           I, Debra Kekuna Chun, Official Court Reporter, United
 3   States District Court, District of Hawaii, do hereby certify
 4   that pursuant to 28 U.S.C. §753 the foregoing is a complete,
 5   true, and correct transcript of the stenographically reported
 6   proceedings held in the above-entitled matter and that the
 7   transcript page format is in conformance with the regulations
 8   of the Judicial Conference of the United States.
 9           DATED at Honolulu, Hawaii, January 9, 2015.
10
11                                      /s/ Debra Chun
12                                      DEBRA KEKUNA CHUN
13                                      RPR, CRR
14
15
16
17
18
19
20
21
22
23
24
25
```